NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued February 13, 2012
Decided March 22, 2012

**Before**

RICHARD A. POSNER, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 10-3857

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee*, | Court for the Northern District |
| | of Illinois, Eastern Division |
| *v.* | |
| | No. 06 CR 197 |
| LEE ANGLIN, | |
| *Defendant-Appellant.* | **Robert W. Gettleman**, *Judge*. |

## O R D E R

Defendant Lee Anglin defrauded at least 67 victims out of over $10,000,000. He did so by running advertisements that falsely promised a "guaranteed return" on investments in the Wall Street Journal and other well known publications. When interested investors responded, Anglin instructed them to wire money to an "escrow account" that was actually under Anglin's direct and immediate control. Federal investigators caught on to Anglin's activity, and he was arrested for wire fraud on March 24, 2006. On November 22, 2006, the government filed an

information, adding charges for mail fraud, wire fraud and money laundering in violation of 18 U.S.C. §§ 1341, 1343 and 1957(a).

After a cascade of attorneys and pretrial maneuvering, including an attempt by Anglin to flee, as well as evidence that Anglin was using cocaine in violation of his bond conditions, Anglin pleaded *nolo contedere* to a mail fraud charge on July 16, 2009. On November 16, 2010, he was sentenced to 180 months in prison. Anglin now appeals his conviction and sentence, alleging violations of the Speedy Trial Act and various errors in the district court's calculations.

Anglin's first argument on appeal is that his rights under the Speedy Trial Act were violated. The Act requires that an indictment or information be filed within 30 days of the date of arrest and that a criminal trial commence within 70 days thereafter. 18 U.S.C. § 3161(b), (c)(1). A district court may, however, exclude certain delays if the "ends of justice [are] served" by doing so. 18 U.S.C. § 3161(h)(7). District court determinations to exclude time may not be reversed on appeal except where the court has abused its discretion and the defendant has demonstrated actual prejudice. *United States v. Hills*, 618 F.3d 619, 625 (7th Cir. 2010).

In this case, Anglin was arrested on March 24, 2006, but no information was filed until November 22, 2006, which is plainly outside the statutory 30-day time period. There is more to the story, however. The district court excluded the time between April 21, 2006, to November 22, 2006, from the speedy trial clock because Anglin was apparently attempting to cooperate with the government. After the filing of the information, the district court excluded all time for speedy trial purposes except (1) the days between the information and Anglin's arraignment on November 29, 2006, and (2) the time between December 15, 2006 and January 16, 2007. In every instance, Anglin either affirmatively consented to the exclusions of time, or he declined to object. Anglin now contends that his consent to these exclusions was ineffective because his attorney had a conflict of interest. (Around this time, both Anglin and his attorney were being investigated for an alleged attempt to smuggle contraband into the correctional center.) This might give us pause, were it not for the fact that at the next status conference after the potential conflict was revealed, Anglin waived the conflict, stating "I wish to keep him as my attorney . . . ." Anglin's waiver was effective, *United States v. Adkins*, 274 F.3d 444, 453 (7th Cir. 2001), and so these exclusions of time from the speedy trial clock are untainted. All of the district court's other exclusions of time under the Act were proper, see *United States v. White*, 443 F.3d 582, 588–89 (7th Cir. 2006), and thus the court did not abuse its discretion by declining to dismiss the information against Anglin for alleged Speedy Trial Act problems.

Turning to Anglin's sentencing arguments, we similarly can discern no error. First, Anglin contends that the district court erred by over-counting the total number of victims of his fraud. The district court found that the total was 67. In discussing that finding, the district judge posited that even if he were to count the individual investors of Chicago Houses LLC as

a single unit, the total number of victims would still be greater than the threshold for the enhancement, which is set at 50 victims. U.S.S.G. § 2B1.1(b)(2)(B). Anglin seizes on this statement to suggest that the district court applied an inconsistent standard for other corporate investors, such as Prime Investments, Inc. That is not a fair reading of the judge's comments. All the court was trying to say was that the 50-victim mark needed for the enhancement was reached no matter what methodology was used. We note as well that we can find no evidence in the record suggesting that multiple individual investors were actually members of Prime Investments.

Anglin also suggests that 32 investors should not be counted because they did not confer with the FBI about their losses. He bases this argument on the fact that the district court excluded one victim, Rothfeld, from its calculation because of inadequate information regarding Rothfeld's loss and his recalcitrance when questioned by the FBI. We can quickly dispense with this argument. The district court did not exclude Rothfeld on the basis of some *per se* rule that all victims who declined to talk to the FBI are excluded. Rather, it excluded Rothfeld because the government had not presented adequate information to show that he was a victim of the fraud. With respect to the other victims, however, the court was satisfied that the government had presented "plausible summaries of their positions." The district court's conclusion that Anglin had defrauded 67 victims was not clearly erroneous.

Next, Anglin contests the district court's loss determination. Each of his challenges lacks any record support whatsoever, and this is enough to deem these arguments waived. See *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). But even on the merits, these challenges fail. First, Anglin alleges that several investments should not be counted because they are unrelated to the charged scheme. He is wrong. For example, Anglin contests a $66,000.00 payment made by an investor named Holland. A brief examination of the record reveals that Holland's circumstances are consistent with Anglin's *modus operandi*: Holland wired money into an "escrow" account that was actually controlled by Anglin, and Holland's "investment" was backed by a fictional property. All of Anglin's other such challenges are equally unmeritorious.

Anglin also alleges that the district court failed to subtract from the loss total the amounts of certain repayments he made. The record, however, reveals that the government presented evidence of these repayments, and that the district court considered them in making its loss determination.

Finally, Anglin argues that the district court should have deducted the fair market value of collateral that Anglin pledged against the investments he received. Although this is correct in the abstract, U.S.S.G. § 2B1.1(b)(1) app. n.3(E)(ii), the district court noted that it "ha[d]n't seen any indication" that any of Anglin's victims held any such collateral, and Anglin has not

pointed to any evidence in the record that calls this finding into question. We are persuaded that the district court properly imposed a 20-level increase, based on over $10,000,000.00 in losses, under U.S.S.G. § 2B1.1(b)(1)(K). We have considered all of Anglin's other arguments, and we find them to be without merit.

Anglin's conviction and sentence are AFFIRMED. We note as well that on March 19, 2012, Anglin filed a motion *pro se* seeking to dismiss his appeal, apparently because he is worried that success on appeal would do nothing but return him to the Metropolitan Correctional Center in Chicago, and he finds its health care facilities unsatisfactory. In light of our disposition of the appeal, this motion is dismissed as moot.